IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| MARTIN M. ALLEN, | CV 20-147-BLG-TJC |
| Plaintiff, | |
| vs. | **ORDER** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Martin M. Allen ("Allen") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") regarding the denial of claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  (Doc. 2.)  The Commissioner subsequently filed the Administrative Record ("A.R.").  (Doc. 10.)

Presently before the Court is Allen's motion for summary judgment, seeking reversal of the Commissioner's denial and remand for an award of disability benefits, or alternatively for further administrative proceedings.  (Doc. 12.)  The motion is fully briefed and ripe for the Court's review.  (Docs. 12-14.)

1

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court hereby finds the case should be **AFFIRMED**.

## I.     Procedural Background

Allen completed his applications for DIB and SSI on September 20, 2017, alleging disability beginning on January 31, 2017.[1]  (A.R. 207-17.)  A hearing was held on January 30, 2020, in Billings, Montana, before Administrative Law Judge Michele M. Kelley (the "ALJ").  (A.R. 37, 151.)  On February 20, 2020, the ALJ issued a written decision finding Allen not disabled.  (A.R. 19-32.)  Allen requested review of the decision by the Appeals Council.  (A.R. 204-06.)  On August 25, 2020, the Council denied Allen's request for review.  (A.R. 7-9.)  Thereafter, Allen filed the instant action.

## II.    Legal Standards

### A.     Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).  *See*

---

[1] It is not clear from the record the exact date Allen filed for SSI, but according to the ALJ's decision, this application was also filed on September 20, 2017.  (*See* A.R. 19.)

*also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457. In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). But even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d

653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

**B.     Determination of Disability**

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) he suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work he previously performed, or any other substantial gainful employment which exists in the national economy.  42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A).  A claimant must meet both requirements to be classified as disabled.  *Id*.

The Commissioner makes the assessment of disability through a five-step sequential evaluation process.  If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)).  The five steps are:

1. Is claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe?  If so, proceed to step three.  If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3.  Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1?  If so, then the claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4.  Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5.  Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

## III.   Factual Background

### A.     The Hearing[2]

Allen's hearing was held before the ALJ in Billings, Montana, on January 30, 2020.  (A.R. 37.)  Allen testified to issues involving anxiety, anger, depression, left knee pain, headaches, and a history of carpal tunnel surgery.  (A.R. 45, 47-50.)  Allen also testified to a history of seizures stemming from a traumatic brain injury that occurred in the nineties.  (A.R. 43-44.)  Because of his seizure history, Allen testified he could not have a driver's license.  (*Id.*)

Regarding his anger and anxiety, Allen described episodes at his prior job in which he would become upset and angry and would walk away from work to keep himself from reacting physically towards coworkers.  (A.R. 45-46.)  Allen also

---

[2] Relevant testimony from the hearing is further discussed where applicable below.

testified that sometimes when he becomes angry, he breaks things and raises his voice.  (A.R. 50.)  He stated that after these outbursts, he isolates in his room, sometimes for several days, because he "[doesn't] want to have to deal with people."  (A.R. 51-52.)  Allen's sister also testified at the hearing regarding his outbursts.  (*See* A.R. 55-60.)

At the conclusion of the hearing, the ALJ posed hypotheticals to Bob Zadow, vocational expert ("VE").  (A.R. 62-70.)  After reviewing Allen's work history, the VE concluded that a hypothetical claimant with similar characteristics as Allen could not perform any of his past work.  (A.R. 65.)  The VE opined, however, that a hypothetical individual could perform medium work.  (A.R. 66.) The VE also acknowledged that Allen's outbursts would not generally be tolerated in a workplace and that continued episodes would result in termination.  (A.R. 69.)

## B.    The ALJ's Findings

The ALJ followed the five-step sequential evaluation process in considering Allen's claim.  At step one, the ALJ found that Allen had not engaged in substantial gainful activity since his alleged onset date of January 31, 2017.  (A.R. 21.)  At step two, the ALJ found Allen had the following severe impairments: a seizure disorder related to a traumatic brain injury in 1999; carpal tunnel syndrome; and anxiety, depressive, and neurocognitive disorders (in combination). (A.R. 21.)  At step three, the ALJ found that Allen did not have an impairment or

combination of impairments that met or medically equaled the severity of one of

the listed impairments.  (A.R. 22.)

Before considering step four, the ALJ determined Allen had the residual

functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) as
> follows: He can lift, carry, push, and pull 25 pounds frequently and 50
> pounds occasionally.  He can stand and/or walk for about 6 hours of an 8-
> hour workday.  He can sit for about 6 hours of an 8-hour workday.  He can
> frequently push and pull with the bilateral upper extremities.  He cannot
> climb ladders, ropes, or scaffolds.  He can frequently crawl.  He can
> frequently handle, finger, bilaterally.  He needs to avoid concentrated
> exposure to hazards such as unprotected heights, dangerous moving
> machinery.  He can understand, remember, and carry out simple tasks.  He
> can maintain concentration, persistence, and pace for such tasks for 8-hour
> workdays and 40-hour workweeks.  He can tolerate occasional interaction
> with supervisors, coworkers, and the public.  He should not have a job where
> he is required to work in tandem with supervisors or coworkers.  He should
> not have a job where he is required to work directly with the public as a part
> of work duties.  He can tolerate usual, simple work situations and occasional
> changes in routine work settings.  All limitations are to be considered
> sustained work activities in an ordinary work setting on a regular and
> continuing basis, unless otherwise specified.

(A.R. 24.)

At step four, the ALJ found that Allen was unable to perform any past

relevant work.  (A.R. 30.)  Finally, at step five, the ALJ found that based on

Allen's age, education, work experience, and residual functional capacity, there

were jobs that existed in significant numbers in the national economy that he could

perform, such as a press operator, janitor, or hand packager.  (A.R. 30-31.)

Accordingly, the ALJ found Allen not disabled.  (A.R. 31.)

## IV.    Discussion

Allen presents the following issues for review[3], whether the ALJ: (1) failed to include his left knee impairment and headaches as severe impairments; (2) properly discounted his subjective symptom testimony; (3) failed to properly weigh the statements of Allen's former employer and sister; (4) failed to consider his ability to sustain work activities on a regular and continuous basis; and (5) failed to incorporate all of his impairments into the vocational expert's hypothetical.  The Court will address each in turn.

### A.    Consideration of Left Knee Impairment and Headaches

Allen argues the ALJ improperly discounted his treating physicians[4] and failed to include his left knee impairment and headaches as severe impairments. (Doc. 12 at 19.)

---

[3] Allen's "statement of issues presented for review" is difficult to reconcile with the arguments made in his briefing.  For example, when examined, his second issue contains three distinct issues.  Accordingly, the Court separates and restates the issue as articulated here.

[4] Although Allen asserts the ALJ failed to give proper weight to the opinions of his treating physicians, Allen fails to identify the providers or the opinions that were allegedly improperly discounted.  The ALJ's decision indicates she considered Allen's testimony regarding his left knee, headaches, and noted that primary care notes documented some headaches.  (A.R. 26.)  But, beyond citing to his testimony, Allen fails to cite any medical evidence in the record that the ALJ did not consider.  The Court, therefore, does not find that Allen has sufficiently placed the ALJ's consideration of any specific treating physician's opinion at issue.  Thus, the Court finds the ALJ did not err with regard to the treating providers.

Under step two of the sequential evaluation process, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. 20 C.F.R §§ 404.1520(c), 416.920. At the step two inquiry, "the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The Social Security Act defines a "severe" impairment as one "which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "An impairment or combination of impairments may be found 'not severe *only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen*, 80 F.3d at 1290) (emphasis in original). The step two "inquiry is a de minimis screening device [used] to dispose of groundless claims." *Smolen*, 80 F.3d at 1290.

Here, the ALJ found that Allen has the following severe impairments: a seizure disorder related to a traumatic brain injury in 1999; carpal tunnel syndrome; and a combination of anxiety, depressive, and neurocognitive disorders. (A.R. 21.) The ALJ determined these impairments "significantly limit [Allen's] ability to perform basic work activities . . . ." (A.R. 22.) The ALJ did not find any nonsevere impairments that caused "more than minimal functional problems" or

9

that had resulted in "any additional sustained physical or mental limitations on a regular and continuing basis for 12 continuous months beyond the limitations set forth in the residual functional capacity." (*Id.*)  The ALJ discussed Allen's testimony that he had pain when bending his left knee and bad headaches once a month.  (A.R. 26, 48-49.)  She also acknowledged a primary care note from March 2018 documenting headaches.  (A.R. 26, 332-33.)  But there are no medical opinions reflecting judgments about the nature and severity of Allen's left knee impairment and headaches.  Moreover, Allen has not pointed to any evidence that these conditions are severe.  In sum, there is minimal evidence that Allen's left knee or headaches "significantly limit[ed] [his] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).

In addition, step two was decided in Allen's favor.  Therefore, he was not prejudiced by the failure to include additional severe impairments, and any alleged error is harmless.  *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

Accordingly, the ALJ's finding was supported by substantial evidence, and therefore, the ALJ did not err considering Allen's left knee or headaches.

## B.    Subjective Symptom Testimony

Allen argues that the ALJ improperly discounted his subjective symptom testimony without providing clear and convincing reasons for rejecting his

testimony.  (Doc. 12 at 23.)  The Commissioner counters that the ALJ reasonably evaluated Allen's testimony.  (Doc. 13 at 4-5.)

A claimant's testimony is analyzed in two steps.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.* Second, if there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if she provides "specific, clear and convincing reasons" for doing so.  *Id.*  "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'"  *Turner*, 613 F.3d at 1224 n.3.  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  *See also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).  The clear and convincing standard "is not an easy requirement to meet: [it] is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (internal quotation and citation omitted).

To assess a claimant's subjective symptom testimony, the ALJ may consider (1) ordinary credibility techniques, (2) unexplained or inadequately explained failure to seek or follow treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities. *Smolen*, 80 F.3d at 1284; *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). An ALJ may also take the lack of objective medical evidence into consideration. *Baston v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

Here, the ALJ determined that Allen's medically determinable impairments could reasonably be expected to cause his symptoms, and there is no argument that he is malingering. Therefore, the ALJ was required to cite specific, clear, and convincing reasons if she rejected Allen's subjective testimony.

But Allen does not point to any of his testimony that the ALJ rejected. The only finding the ALJ made with respect to Allen's subjective complaints was that Allen's "medical records do not substantiate his subjective allegations of limitations causing total disability." (A.R. 26.) The ALJ set forth several specific reasons to support this finding.

First, at the hearing, Allen testified to a history of seizures, but provided "they've gotten easier" and reported seizures only once or twice a year. (A.R. 44.) In her decision, the ALJ noted that although there was little evidence of frequent recurrence of seizures in the record, the RFC included "some hazard precautions to

account for this," such as avoidance of unprotected heights and dangerous moving machinery. (A.R. 24, 26.) An ALJ may take objective medical evidence, or the lack thereof, into consideration when assessing credibility, *Baston*, 359 F.3d at 1196, and there is support for the ALJ's conclusions in the record. (A.R. 332 (listing seizures but providing no discussion on the condition).)

Next, the ALJ examined Allen's history of bilateral carpal tunnel syndrome. (A.R. 26.) The ALJ noted Allen's treatment notes from 2017 documented progressing problems with carpal tunnel, which included use of wrist braces, x-ray imagining, treatment with injections and medications, and, ultimately, carpal tunnel release surgery on both hands in 2018. (*See* A.R. 314-15, 317-18, 320-21, 335-36, 338-39, 341-42, 344-45, 359-60, 363.) The treatment notes show Allen's condition improved after surgery and a consultative exam in 2018 did not find any lifting or carrying restrictions or limitations. (A.R. 363-64, 384.) At the hearing, Allen testified he did not have ongoing issues with carpal tunnel. (A.R. 47.) Nonetheless, the RFC accounts for his surgical history limiting him to medium work and some handling and fingering limitations. (A.R. 24, 27.)

Last, the ALJ conducted a thorough analysis of Allen's mental health records. (A.R. 27-30.) The ALJ examined notes from a counselor and therapist in training and numerous consultative exams. (*See* A.R. 74-78, 114-27, 327-29, 390-95, 442-43.) The ALJ noted that Allen had been evaluated by two mental health

experts, Robert Bateen, PhD, and Marsha McFarland, PhD.  Dr. Bateen found only

mild function impairments, while Dr. McFarland found moderate impairments and

said he would "do best with limited contact with the general public."  (A.R. 29-30).

The ALJ specifically referenced Allen's testimony, as well as that of his sister, and

determined that he had more functional problems than Dr. Bateen found.

Therefore, the ALJ found Dr. McFarland's findings of greater impairment more

persuasive.  (A.R. 30.)  Dr. McFarland's recommended limitation is also reflected

in the RFC, which provides that Allen "should not have a job where he is required

to work in tandem with supervisors or coworkers" and "should not have a job

where he is required to work directly with the public as part of [his] work duties."

(A.R. 24.)  In sum, contrary to Allen's assertion, the ALJ did not reject his

testimony, but instead considered and accounted for his limitations in the RFC.

The Court therefore finds that the ALJ did not arbitrarily discredit Allen's

testimony.

### C.    Lay Witness Testimony

Next, Allen argues the ALJ erred by improperly discounting the testimony

of his sister and his former employer.  (Doc. 12 at 23.)

An ALJ "must consider lay witness testimony concerning a claimant's

ability to work."  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir.

2006).  Because "lay witness testimony as to a claimant's symptoms or how an

impairment affects ability to work *is* competent evidence, [it] *cannot* be

disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.

1996) (citing 20 C.F.R. § 404.1513(e)) (emphasis in original).  For claims filed on

or after March 17, 2017, the Social Security regulations revisions provide that an

ALJ is "not required to articulate how [she] considered evidence from nonmedical

sources . . . ."  20 C.F.R. § 404.1520c(d).  Prior to these revisions, the Ninth Circuit

required an ALJ to provide germane reasons for discounting lay witness testimony.

*Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Turner*, 613 F.3d at 1224.

It is, therefore, unclear whether, under Ninth Circuit law, an ALJ must continue to

provide germane reasons to disregard lay witness statements.  *Singh v. Comm'r of*

*Soc. Sec.*, 2021 WL 4078021, at *7 (E.D. Cal. Sept. 8, 2021).  *Compare, e.g.*,

*Wendy J.C. v. Saul*, 2020 WL 6161402, at *12 n.9 (D. Or. Oct. 21, 2020) (noting

that under the new regulations, "the ALJ is no longer required to provide reasons

germane to lay witnesses to reject their testimony") *with, e.g.*, *Gregory E.H. v.*

*Comm'r Soc. Sec. Admin.*, 2022 WL 843393, at *7 (D. Or. Mar. 22, 2022) (finding

ALJ erred by not providing reasons germane to each lay witness whose testimony

was disregarded, but holding error was harmless); *Joseph M.R. v. Comm'r of Soc.*

*Sec.*, 2019 WL 4279027, at *12 (D. Or. Sept. 9, 2019) ("Although § 404.1520c(d)

states the Commissioner is 'not required to articulate how we consider evidence

from nonmedical sources' using the same criteria for medical sources, it does not

eliminate the need for the ALJ to articulate his consideration of lay-witness statements and his reasons for discounting those statements.").

Here, Allen's sister and employer both submitted a letter and his sister testified at the hearing. (*See* A.R. 55-60, 301, 302-03.)  The former employer wrote a letter providing that Allen had worked sporadically at Montana Sprinkler from 2004 to 2017.  (*Id.*)  In the letter, Allen was described as an "excellent worker" and was well-liked.  (*Id.*)  The letter also described, however, that if Allen "felt 'confronted' in anyway, be it imagined or not, he would just leave" and walk away from job sites.  (*Id.*)  These episodes occurred "easily 2 to 3 times a month" and Allen may not return to work for several days.  (*Id.*)  The employer explained that the company was aware of Allen's history of traumatic brain injury, and thus, "afforded him more leniency" than they might have otherwise.  (*Id.*)  Allen also testified to these episodes at the hearing and explained that "usually [he] didn't have any difficulties," but that at times he would "get angry" with coworkers and "would want to physically hurt them."  (A.R. 45-46.)  He testified that he was never physical with a coworker, but he "destroyed some stuff . . . [a]nd then [he] would just walk off."  (A.R. 46.)  He explained after these episodes he "would shut himself in."  (*Id.*)  He further explained that the company always allowed him to come back until the summer of 2017 when he was told that someone had been hired instead of him.  (A.R. 47.)

16

Allen's sister's letter and testimony describe similar behavior.  In her letter, his sister observed that Allen has "difficulties coping in [his] everyday life."  (A.R. 302.)  For example, she explained that he becomes frustrated, at times, by simple tasks, which leads to increasing frustration and anger, vocal outbursts, throwing objects, and ultimately, self-isolation in his room, sometimes for days.  (*Id.*)  In her letter and at the hearing, she also described that Allen had significant anxiety, leading to anger, in filling out job applications and going to interviews.  (A.R. 56-57, 302-03.)

In her decision, the ALJ cited § 404.1520c(d), but nonetheless, considered both Allen's sister's and his former employer's testimony.  (A.R. 25.)  She also acknowledged that the vocational expert indicated Allen's behavioral issues were accommodated at Montana Sprinkler.  (*Id.*)  The ALJ noted, however, that Allen's lack of a driver's license due to his seizure history was also an issue with his employment at Montana Sprinkler.  (A.R. 43-44, 53 (Q: "[W]hy do you think you went from being a supervisor to a worker?"  A: "One reason was because I didn't have a driver's license."), 59.)  The ALJ also found that although the employer's letter indicated Allen left the workplace, it was not clear from the letter how often "this occurred over the entire 13 years he worked for them."  (A.R. 25.)  In addition, the ALJ found Dr. McFarland's assessment that Allen "would do best

with limited contact with the general public," was supported by Allen's and his sister's testimony.  (A.R. 29-30.)

Neither Allen nor the Commissioner address the new regulation in their briefing.  Although it is unclear whether an ALJ must still provide germane reasons for discounting lay witness testimony, here, the ALJ did consider the testimony of Allen's former employer and his sister, and did not appear to discount the testimony in any way.  Further, these limitations are incorporated into the RFC, providing Allen should not have a job where he is required to work in tandem with supervisors, coworkers, or with the general public.  (A.R. 24.)

To the extent the ALJ discounted any portion of his sister's or employer's testimony, and erred in failing to provide germane reasons for doing so, any such error was harmless.  "To show that an ALJ's error was not harmless, a claimant must demonstrate a 'substantial likelihood of prejudice.'"  *Mariah V.A. v. Saul*, 2021 WL 1660947, at *8 (D. Mont. Apr. 28, 2021) (quoting *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012)).  Allen has not done so here.

Accordingly, the Court finds that there is no error with regard to the ALJ's consideration of lay witness testimony.

/ / /

/ / /

/ / /

### D.    Consideration of Ability to Sustain Work

Allen also argues the ALJ improperly ignored Social Security Rulings

("SSR") 96-8p and 16-3p in determining Allen's ability to perform sustained work

considering his, and the lay witness, testimony.  (Doc. 12 at 23.)

Residual functional capacity refers to "an individual's ability to perform

sustained work activities in an ordinary work setting on a regular and continuing

basis."  SSR 96-8p, 61 Fed. Reg. 34474-01, at 34474, 1996 WL 362207 (July 2,

1996).  "A 'regular and continuing basis' means 'eight hours a day, for 5 days a

week, or an equivalent work schedule.'"  SSR 96-8p, 61 Fed. Reg. at 34475.  SSR

16-3p relates more specifically to symptom evaluation, and provides that, in

considering an individual's treatment history, an ALJ *may* consider factors such as

how "[a]n individual may have structured his or her activities to minimize

symptoms to a tolerable level by avoiding physical activities or mental stressors

that aggravate his or her symptoms."  SSR 16-3p, 2017 WL 5180304, at *9 (Oct.

25, 2017).

Here, Allen argues the ALJ failed to consider Allen's ability to work given

his history of becoming angry and leaving work.  As discussed above, however,

the ALJ did consider this testimony and factored this limitation into the RFC.

Accordingly, the ALJ did not fail to consider Allen's ability to perform sustained

work activities on a regular and continuing basis.

19

### E.  Vocational Expert's Hypothetical

Finally, Allen argues the ALJ failed to incorporate all his impairments and limitations into the hypothetical questions posed to the vocational expert.  (Doc. 12 at 29-31.)

Hypothetical questions posed to the vocational expert must set out all of the claimant's limitations and restrictions.  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'"  *Magallanes*, 881 F.2d at 756 (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)).  If the assumptions in the hypothetical are not supported by the record, then the vocational expert's opinion that the claimant has a residual working capacity has no evidentiary value.  *Embrey*, 849 F.2d at 422.

As discussed above, the Court has determined the ALJ adequately considered Allen's testimony and the lay witness testimony.  Accordingly, the hypotheticals the ALJ relied on properly accounted for all of Allen's limitations that the ALJ found to be supported by evidence in the record.

The Court, therefore, finds the ALJ's determination at step five is supported by substantial evidence.

/ / /

/ / /

V.      **Conclusion**

Based on the foregoing,  **IT IS ORDERED** that the Commissioner's

decision is **AFFIRMED**, and Plaintiff's motion for summary judgment (Doc. 12)

is **DENIED**.

DATED this 30th day of March, 2022.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge